S06A1837. APPLING v. THE STATE.
S06A1838. FLOWERS v. THE STATE.
(642 SE2d 37)

HUNSTEIN, Presiding Justice.

Appellants Marco Devon Appling and Antonio Lamar Flowers were jointly tried and convicted of the malice murder of Alphonso Parks, the aggravated assault of James Antonio Overton, and other related offenses.[1] Because appellants raise similar issues on appeal, their cases have been consolidated. We affirm the judgments of conviction in both cases.

1. The evidence authorized the jury to find that on the night of the crimes, an altercation with a group including Jermaine Brown occurred on Broad Street in Augusta. Appellants later gathered with several others at the home of Appling's cousin on the 1900 block of Broad Street; Brown reappeared and began shouting. Appellants got into a red Dodge Neon, with Appling driving and Flowers in the front passenger seat, and began driving down the street, seeking Brown. Shots were fired from the car into a crowd, fatally wounding Parks and injuring Overton. Appellants were pulled over for speeding around the 1500 block of Broad Street, less than a mile from the site of the shooting. Appling immediately put his hands out the window when he was stopped. Brown drove up, shouting that appellants had just shot someone, and Appling and Flowers were taken into custody; the deputy confirmed the shooting report with dispatch. Appling told the deputy there was no gun in the car and he did not shoot anyone.

---

[1] The crimes occurred on August 16, 2000. Appling and Flowers were indicted by a Richmond County grand jury on October 3, 2000 for malice murder, felony murder with aggravated assault as the underlying felony, aggravated assault, and two counts of possession of a firearm during the commission of a crime; Flowers was also indicted for possession of a firearm by a convicted felon. Following a bifurcated jury trial, appellants were convicted of all counts. On January 30, 2002, appellants were sentenced to life in prison on the merged malice murder and felony murder convictions, along with a twenty-year consecutive sentence on the aggravated assault conviction and five years on each of the firearm possession convictions. Appling filed a motion for new trial on February 6, 2002, which was denied on June 1, 2004; his notice of appeal was timely filed. Flowers filed an amended motion for new trial on February 12, 2002, which was denied on May 30, 2006; he filed a notice of appeal the same day. Both appeals were docketed in this Court on July 6, 2006 and submitted for decision on the briefs.

A deputy walked from the traffic stop back toward the site of the shooting and found a Ruger 9 mm handgun in the road. Ten 9 mm cartridge casings were found in the area of the shooting, in a pattern indicating that the shooter had turned and fired back as the car drove away. The casings and the bullet recovered from Parks's body were fired from the Ruger found in the road. Fresh scratch marks and gunpowder residue were found on the roof of the front passenger side of the red Neon, indicating that a gun had been fired over the roof of the vehicle.

Viewed in the light most favorable to the verdicts, we conclude the evidence was sufficient to authorize a rational trier of fact to find Appling and Flowers guilty beyond a reasonable doubt either as perpetrators or as parties to the crimes charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellants contend that the trial court erred by failing to grant the joint motion to sever their trials. See OCGA § 17-8-4. A defendant seeking severance must show clearly that he will be prejudiced by a joint trial; in the absence of such a showing, the trial court's denial of a motion to sever will not be disturbed. *Rhodes v. State*, 279 Ga. 587 (3) (619 SE2d 659) (2005). Factors to be considered by the trial court in exercising its discretion are: whether a joint trial will create confusion as to the law and evidence applicable to each defendant; whether there is a danger that evidence admissible against one defendant will be improperly considered against the other, regardless of the court's instructions; and whether the defendants are asserting antagonistic defenses. Id. Because appellants both testified here, there is no potential violation of the Sixth Amendment right of confrontation pursuant to *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). See *Wright v. State*, 263 Ga. 810 (3) (440 SE2d 7) (1994).

Appellants maintain that severance was required due to their antagonistic defenses, but this factor alone is not sufficient to warrant the grant of separate trials absent a showing of harm. *Rhodes*, supra, 279 Ga. at 590 (3). Here, Appling and Flowers both testified and were cross-examined, with each blaming the other for the shooting. Even if the motion to sever had been granted, appellants could have testified at each other's separate trials and related the same testimony. Moreover, appellants had ample opportunity to cross-examine each other concerning their respective defenses. See *Kennedy v. State*, 253 Ga. 132 (2) (317 SE2d 822) (1984). Thus, appellants have failed to show harm.

Appling claims that he was prejudiced by his inability to impeach Flowers with a prior conviction, relying on *Morris v. State*, 204 Ga. App. 437 (1) (419 SE2d 733) (1992) (State not entitled to secure conviction at proceeding where its witnesses are not subject to

impeachment). However, we agree with the distinction drawn by the Court of Appeals in *Woods v. State*, 255 Ga. App. 265, 267 (564 SE2d 853) (2002) (*Morris*, supra, applicable only when co-defendant called as witness for State), and find this argument meritless. Flowers claims that he was prejudiced by the admission of evidence regarding Appling's behavior and statement at the traffic stop, and the inability to introduce his own custodial statement, in which he maintained his innocence. But Appling did not implicate Flowers during the traffic stop, and the trial court ruled that the custodial statement could be put into evidence if Flowers testified, which he ultimately did. Thus, appellants have failed to meet their burden of showing that they were clearly prejudiced by proceeding with a joint trial.

3. Any error in the admission of testimony by a State witness regarding unrelated crimes arising from previous conflicts between the groups involved here was harmless because it was cumulative of testimony defense counsel elicited during cross-examination of the preceding witness. See *Hancock v. State*, 277 Ga. 835 (5) (596 SE2d 127) (2004) (purportedly improper character evidence held harmless because cumulative of other evidence before jury).

4. Appellants contend that the trial court erred by overruling an objection to the State's reference to Parks as the "murder victim" during its direct examination of a crime scene technician, and by commenting on the use of the term in violation of OCGA § 17-8-57.[2] We find no error in this reference because the evidence was clear that Parks was unlawfully killed. See *Ruffin v. State*, 243 Ga. 95 (14) (252 SE2d 472) (1979). As the trial court's aside was merely an explanation of its ruling on the objection, i.e., that inappropriate use of the word had not been an issue thus far in the trial, it does not constitute the type of judicial comment prohibited by OCGA § 17-8-57.

5. Appellants maintain that the trial court erred by allowing the State to characterize the defense as a "fraud" during closing argument.[3] The prosecutor argued that the defense cross-examination of State witnesses was a fraud because when appellants ultimately testified, they both admitted certain facts in issue, e.g., their presence at the scene. The wide leeway given to argue all reasonable inferences that may be drawn from the evidence during closing argument, see

---

[2] In a pre-trial motion in limine, appellants sought to prohibit the State from using the word "murder"; after a discussion in which the prosecutor acknowledged that it would be improper to characterize the defendants as murderers until closing argument, the trial court denied the motion and instructed the State to be guided by its representations. When the reference to the "murder victim" was made and appellants objected, the trial court noted that the prosecutor had said there would be times he would have to use the word, adding that "I think we've gotten through it pretty good" before overruling the objection.

[3] Following appellants' objection, a bench conference was held off the record; the State then continued with its closing.

*Smith v. State,* 279 Ga. 48 (2) (610 SE2d 26) (2005), encompasses pointing out inconsistencies in a defendant's testimony and urging that, on that basis, the defendant lied. *Nichols v. State,* 281 Ga. 483 (640 SE2d 40) (2007). The fact that the inconsistencies argued here were within the defense as a whole does not require a different result.

6. Flowers argues that the cumulative effect of the above enumerations of error requires reversal of his convictions. As this Court has rejected the cumulative error rule, *Laney v. State,* 271 Ga. 194 (11) (515 SE2d 610) (1999), this argument is without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 5, 2007.

*Garrett & Gilliard, Michael C. Garrett,* for appellant (case no. S06A1837).

*Leigh S. Schrope, Sam B. Sibley, Jr., James C. Bonner, Jr.,* for appellant (case no. S06A1838).

*Daniel J. Craig, District Attorney, Madonna M. Little, Assistant District Attorney, Thurbert E. Baker, Attorney General, Robin J. Leigh, Assistant Attorney General,* for appellee.